UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUREEN GRAY,
      Plaintiff,

v.                                          Case No. 11-15016
                                          Honorable Patrick J. Duggan

MUTUAL OF OMAHA LIFE
INSURANCE COMPANY, and
DETROIT ENTERTAINMENT LLC,
STD PLAN,[1]
      Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE THE DECISION TO DENY HER SHORT-TERM DISABILITY BENEFITS AND DENYING IN PART AND GRANTING IN PART DEFENDANTS' CROSS-MOTION TO AFFIRM THE ADMINISTRATOR'S DECISION AND TO DISMISS DETROIT ENTERTAINMENT LLC STD PLAN AS A PARTY

      Maureen Gray ("Plaintiff") filed this lawsuit against Mutual of Omaha Life

Insurance Company ("MUO") and Detroit Entertainment, LLC, STD Plan ("STD Plan")

(collectively "Defendants"), pursuant to the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1132.[2]  MUO is the administrator of the plan under which

Plaintiff claims benefits.  Plaintiff is challenging MUO's decision finding her ineligible

for short-term disability ("STD") benefits under the plan.

_____

[1]According to Defendants, the proper names of the parties named by Plaintiff as defendants are United of Omaha Life Insurance Co. and Detroit Entertainment, LLC Short-Term Disability Plan.

[2]As Defendants point out, Plaintiff asserts no factual allegations in her Complaint against the STD Plan.  Therefore, Defendants suggest in their motion that the STD Plan should be dismissed as a party.  Plaintiff does not respond to this suggestion or otherwise set forth a basis for finding the plan liable.  The Court accordingly considers Plaintiff's claim against the STD Plan to be abandoned and is dismissing the STD Plan as a defendant.

Plaintiff filed this lawsuit in the Circuit Court for Wayne County, Michigan on October 12, 2011.  Defendants removed Plaintiff's Complaint to federal court pursuant to 28 U.S.C. §§1331, 1441 on November 14, 2011.  In accordance with this Court's Scheduling Order, Plaintiff filed a motion to overturn the decision on the administrative record and Defendants filed a cross-motion to affirm the ERISA plan administrator's decision.  For the reasons set forth below, the Court is granting Plaintiff's motion and denying in part and granting in part Defendants' motion.

**<u>Factual Background</u>**

Plaintiff, a card dealer at Motor City Casino, filed a claim for STD benefits on December 28, 2010.  (AR at 45.)  MUO is the administrator of the disability insurance plan offered through Plaintiff's employer, Detroit Entertainment LLC, also known as Motor City Casino.

The disability insurance plan under which Plaintiff filed her claim provides in pertinent part:

> Disability and Disabled means that because of an injury or sickness, a significant change in your mental or physical functional capacity has occurred in which:
>
> a) During the Elimination Period, you are prevented from performing the Material Duties of your regular job (on a part-time or full-time basis) or are unable to work full-time; and
>
> b) After the Elimination Period, you are;
>
> > 1) Prevented from performing the material duties of your regular job (on a part-time or full-time basis) or are unable to work full-time;

and

2) Unable to generate current earnings which exceed 80% of your weekly earnings due to that same injury or sickness.

Disability is determined relative to your ability or inability to work. It is not determined by the availability of a suitable position with your employer.

(AR at 39.)

Plaintiff filed her claim after her psychiatrist, Dr. Bakul Parikh, diagnosed her as suffering from "Mood Disorder NOS," and told her she should refrain from working. (AR at 288.) Plaintiff's primary care physician, Dr. Jennifer Fretz, filed a Family and Medical Leave Act ("FMLA") certification form on Plaintiff's behalf on December 3, 2010, stating that Plaintiff was unable to work based on Dr. Parikh's diagnosis. (AR at 298.)

Plaintiff's medical records reflect that she suffers from psoriasis of her hands, which Plaintiff states in her request for benefits, prevents her from being able to perform her job as a card dealer at Motor City Casino. (AR at 308.) According to her medical records, Plaintiff underwent surgery for carpal tunnel syndrome in August and September 2010. (AR at 168.) While seeing Dr. Fretz on November 19, 2010, Plaintiff described pain in her hands and feet. (AR at 384.) Plaintiff also mentioned that after conducting research online, she thought she had all of the symptoms of fibromyalgia. (*Id.*) Plaintiff further described emotional problems she was experiencing, such as not liking people anymore and having crying spells. (*Id.*)

Plaintiff continued to see Dr. Parikh several times through December 2010. On December 1, 2010, Dr. Parikh documented that Plaintiff had a past history of depression beginning in 2000, and post traumatic stress disorder stemming from an incident where a police officer "blew [his] head off" while sitting at Plaintiff's table at the casino when she was working. (AR at 287, 384.) Later, on December 15, 2010, Plaintiff noted on a symptom checklist provided by Dr. Parikh that she was "feeling no interest in things, feeling low in energy or slowed down, and [having] trouble remembering things." (AR at 375.) On December 16, 2010, she informed Dr. Parikh that she was "terrified of making a mistake when people come in and she needs to function as a dealer." (AR at 285.) These symptoms led Dr. Parikh to diagnose Plaintiff with major depression and panic disorder on December 29, 2010. (AR at 404.) On December 30, 2010, Dr. Fretz issued an attending physician's statement certifying that Plaintiff should continue to be off work, citing sleep disorder, cognitive disorder, depression, and chronic pain as the justification. (AR at 403.)

Dr. Parikh continued to see Plaintiff and prescribed several psychiatric medications in early 2011, including Trazadone, Lamictal, and Seroquel. (AR at 277, 281.) Plaintiff also continued treatment with Dr. Fretz for the pain in her hands and feet. On January 20, 2011, Dr. Fretz noted that "the tips of [Plaintiff's] fingers are split and sting and burn." (AR at 418.) On March 14, 2011, Dr. Fretz observed that Plaintiff's "hands are really bad and burn like they are on fire." (AR at 412.)

4

MUO received Plaintiff's claim for STD benefits on December 28, 2010.  (AR at 45.)  In support of her application, both of her treating physicians, Drs. Fretz and Parikh, submitted attending physician's statements attesting to her need to be off work.  (AR at 403-04.)

In response to the benefits request, MUO initiated a paper review of Plaintiff's file. (AR at 431.)  The reviewing nurse, Julie Grancer, received and reviewed copies of Plaintiff's medical records and concluded that the available medical documentation did not support a finding that Plaintiff was unable to perform the material duties of her job. (AR at 433.)  Nurse Grancer dismissed the possibility of fibromyalgia because there was no definitive diagnosis and no objective evidence supporting it.  (AR at 432.)  MUO sent a letter to Plaintiff dated January 21, 2011, denying her request for STD benefits.  (AR at 361-63.)  The following portion of the decision letter explains MUO's reasons for rejecting Plaintiff's other symptoms and/or diagnoses as a basis for finding her disabled:

> The medical records we received noted that you were diagnosed with depression.  There has been no complete thorough psychological assessment to reveal abnormalities with affect, orientation, memory, judgment or concentration.  It was noted that you appear anxious on 12/01/10 but with no cognitive deficits.  It was also noted that you were going on vacation and that you will not be seen again until 12/16/10.  This does not support a cognitive impairment factor limiting focus or concentration, socialization, communication or any other mental impairing issue.
>
> In summary, the documentation we have received does not support your inability to perform your regular job.  Therefore, no benefits are payable and your claim has been denied.

5

(AR at 362.)

Plaintiff timely appealed the denial of her request for STD benefits. Both of Plaintiff's treating physicians filed letters in support of her appeal, taking issue with MUO's interpretation of their medical notes in the initial proceedings. (AR at 269, 359.) The doctors also provided additional medical documentation in support of Plaintiff's appeal. Those notes reflect that Plaintiff continued to experience the same pain in her hands and psychological problems throughout February and March 2011. (AR at 273-77.) Dr. Parikh's notes from March 10, 2011, continue to indicate "psoriasis is bad, her hands are in bad shape," and that Plaintiff was still experiencing anxiety problems. (AR at 273.)

On March 16, 2011, MUO assigned a psychiatrist, Dr. Timothy Tse, to review Plaintiff's file on appeal. Although the policy provided the option, MUO elected not to refer Plaintiff for an independent medical or psychiatric evaluation as part of the appeal process. Instead, MUO only reviewed the medical documentation and their previous written decision (a "paper review"). On May 10, 2011, after reviewing Plaintiff's records, Dr. Tse made the following request to MUO:

> The IntelliScript does not show any psychiatric medications/prescriptions were filled since 2007. Please ask the insured where she had her prescriptions filled during the last 12 months. Then please obtain the pharmacy records. We will need this information to determine if she complied with treatment.

(AR at 453.)

It does not appear from the record that MUO requested or obtained these documents. Instead, on May 12, 2011, MUO sent Plaintiff a letter denying her appeal and issuing a final decision that her request for STD benefits would not be granted. (AR at 88.)

## Standard of Review

Generally, the standard of review of a denial of ERISA benefits depends on the language of the plan itself. If the plan vests discretionary authority in the administrator, the denial may be reversed only upon a showing that the decision was "arbitrary and capricious." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004). If the plan vests no discretionary authority in the administrator, then the decision should be reviewed by the court *de novo*. *Firestone Tire & Co. v. Bruch*, 489 U.S. 101, 102, 109 S. Ct. 948, 950 (1989).

Relying on the STD Plan's provision that "[b]enefits will be paid after [MUO] receives acceptable proof of loss," MUO contends that the plan grants discretionary authority in the administrator and its decision should be reviewed under the arbitrary and capricious standard. Case law supports MUO's argument. However, in February 2007, the Michigan Office of Financial and Insurance Services promulgated Michigan Administrative Code Rules 500.2201-.2202, prohibiting discretionary clauses in insurance contracts issued, advertised, or delivered to any person in Michigan and

7

requiring *de novo* review of denials of ERISA benefits within Michigan.[3]  *See* Mich.

Admin. Code R. 500.2201-.2202 (2007).

These rules define discretionary clauses as follows:

> A provision in a form that purports to bind the claimant to or grant deference in subsequent proceedings to the insurer's decision, denial, or interpretation of terms, coverage, or eligibility for benefits including, but not limited to, a form provision that does any of the following:

I)      Provides that a policyholder or other claimant may not appeal a denial of a claim.

II)     Provides that the insurer's decision to deny policy coverage is binding upon a  policyholder or other claimant.

III)    Provides that on appeal the insurer's decision making power as to policy coverage is binding.

IV)     Provides that the insurer's interpretation of the terms of a form is binding upon a policyholder or other claimant.

V)      Provides that on appeal the insurer's interpretation of the terms of a form is binding.

VI)     Provides that or gives rise to a standard of review on appeal that gives deference to the original claim decision.

VII)    Provides that or gives rise to a standard of review on

---

[3]The Sixth Circuit Court of Appeals has held that the rules are not preempted by ERISA.  *Am. Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009).  The rules were promulgated pursuant to the authority vested in Michigan's insurance commissioner in Michigan Compiled Laws Sections 500.210 and .2236.  *See* Mich. Admin. Code R. 500.2201, .2202; Mich. Comp. Laws §§ 500.210, .2236; *see also Ross*, 558 F.3d at 602.

appeal other than a *de novo* review.

Mich. Admin. Code R. 500.2201(c).  The rule prohibiting such clauses in Michigan reads:

> On and after the first day of the first month following the effective date of these rules [i.e. June 1, 2007], an insurer shall not issue, advertise, or deliver to any person in this state a policy, contract, rider, indorsement, certificate, or similar contract document that contains a discretionary clause. This does not apply to a contract document in use before that date, but does apply to any such document revised in any respect on or after that date.

*Id*. R. 500.2202(b).

As Plaintiff argues, the STD Plan at issue in this case became effective September 1, 2010, well after the effective date of the Michigan rules prohibiting discretionary clauses.  (AR at 1.)  The STD Plan also states that it "is issued in and is subject to Michigan law."  (*Id*.)  Defendants fail to address the effect of the Michigan rules on the applicable standard of review in this case.  This Court concludes that it's review of MUO's denial of Plaintiff's application for benefits must be conducted under the *de novo* standard.[4]

When a court reviews a denial of ERISA benefits *de novo*, it is simply required to determine "whether or not it agrees with the decision under review."  *Perry v. Simplicity*

---

[4]Plaintiff also claims that there is a conflict of interest in this case because MUO is liable to pay any award of benefits, yet it also is the party reviewing the claim.  The Supreme Court held in *Metropolitan Life Insurance Co. v. Glenn*, 545 U.S. 105, 128 S. Ct. 2343, 2348 (2008), that this arrangement does in fact create a conflict of interest.  The Court also determined that this conflict of interest should be "weighed as a factor in determining whether there is an abuse of discretion."  *Id*. at 2350.  This Court does not reach this issue in it's analysis however, as it is reviewing MUO's decision *de novo*.

9

*Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990).  In other words, the court must decide "whether the administrator . . . made a correct decision."  *Id.* at 967.  The administrator's decision is accorded no deference or presumption of correctness.  *Id.* at 966.  Review is limited to the record before the plan administrator and the court must decide whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan.  *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002).  For the reasons that follow, this Court concludes that MUO's decision was incorrect.

## Analysis

Plaintiff furnished the plan administrator with medical evidence showing that she was disabled and prevented from performing her essential job functions.  Plaintiff's treating doctors, two board-certified medical professionals, determined that Plaintiff could not work because of major depression, panic disorder, and chronic pain in her hands.  (AR at 403-404.)  MUO summarily rejected these diagnoses after completing a paper review of Plaintiff's file and determining that there was insufficient objective evidence to verify the diagnoses.  (AR at 361.)  This Court disagrees.

To determine if Plaintiff is disabled, the Court must decide if she is "prevented from performing the material duties of her regular job."  (AR at 39.)  The job description for Plaintiff's job as a card dealer sets forth the following physical/mental demands:

Requires the ability to stand for approximately eight hours with periodic

10

breaks. Requires mobility. Requires eye/hand coordination and manual dexterity and the ability to distinguish letters, numbers, and symbols. Regular, predictable attendance required. Requires normal (with or without corrective lenses) vision range and absence of color blindness. Requires the ability to distinguish winning/losing combinations and settle wagers accordingly.

(AR at 135.)

Additionally, her job duties include but are not limited to:

1.   Apply skill in dealing individual games, providing prompt, accurate and courteous service in accordance with policies and procedures.

2.   Handle customer transactions for "buy-ins", "pay-offs" and markers.

3.   Verify fills and credits to the game.

4.   Notify Casino Pit Floorperson of any irregularities in the play and/or transactions during the shift.

5.   Adhere to appropriate gaming regulations, policies and procedures.

6.   Take losing bets and pay winning bets according to established rules and procedures.

7.   Other job-related duties as assigned.

(*Id.*)

Plaintiff was diagnosed with fingertip eczema and intermittent swelling in her hands by her treating physician, Dr. Fretz.  In a January 31, 2011 letter, Dr. Fretz noted that, due to fingertip eczema and intermittent swelling, Plaintiff is limited in "her ability to meet her employer's expectations in terms of precision and speed, so she cannot perform her job effectively."  (AR at 359.)  This supports a finding that Plaintiff could not

11

perform the material job duty of "providing prompt" service to customers because she

was not able to deal cards at the necessary speed.  She also was not able to deal cards with

the necessary precision and accuracy needed for the games to run smoothly.

> In her January 31, 2011 letter, Dr. Fretz further indicated:

> Additionally (and primarily), [Plaintiff] is unable to work now due to
> depression and pain brought on by the tapering and elimination of her
> steroids used in treatment of the aforementioned conditions.  She reports to
> me that she has tried to focus and function physically to meet her job
> expectations but cannot.

(*Id.*)  In a letter dated January 27, 2011, Dr. Parikh added that "Mrs. Gray has a severe

Major Depression 296.33; Panic Disorder 300.01; Health problems with pain and

cognitive dysfunction due to medication side effects."  (AR at 269.)  This medical

evidence indicates that lack of focus brought on by her psychiatric condition and

medication levels prevented Plaintiff from being able to fulfill several of her material job

duties.  A lack of focus would prevent Plaintiff from providing "accurate service" or

"handl[ing] customer transactions," with the level of precision demanded by her

employer.

In short, Plaintiff's treating physicians found her disabled under the STD Plan's

definition due to her fingertip eczema and intermittent swelling of the hands, as well as

major depression.  There is medical evidence supporting the physicians' diagnosis of

these conditions and Plaintiff's inability to concentrate and focus as a result of her

conditions.  For the reasons that follow, the Court rejects Defendants' arguments as to why a contrary conclusion should be reached.

Defendants do not dispute that Plaintiff suffers from fingertip eczema and intermittent swelling of her hands.  Relying on the previous effect of these conditions on her ability to work, however, they argue that these problems are not severe enough to prevent Plaintiff from performing her essential job duties. (Defs.' Mot. at 10.)

Although Plaintiff's fingertip eczema previously did not prevent her from working, the record does not suggest that the symptoms in question, as they presented when the doctors concluded Plaintiff could not work, were of the same severity and/or caused the same level of pain as her previous diagnoses.  Her ability to work with fingertip eczema in the past has little relevance to her ability to work with fingertip eczema now when the pain and severity have increased.  Without evidence to suggest otherwise, this Court can find no reason to doubt Dr. Fretz' diagnosis as it relates to pain from Plaintiff's skin condition and its effect on Plaintiff's ability to perform her essential job functions.

In her attending physician's statement of December 30, 2010, Dr. Fretz lists "chronic pain" as one of Plaintiff's symptoms.  (AR at 403.)  Defendants do not provide evidence to dispute Dr. Fretz's finding that Plaintiff's pain had risen to the level that she could no longer work.  However, Defendants do reject the assertion that this condition could prevent Plaintiff from performing her essential job functions.  Their rejection in this

13

respect is inadequate.  Defendants can not reasonably acknowledge that Plaintiff suffers from a disorder but question the physician's assessment of severity and effect without an independent medical exam.

With respect to Plaintiff's mental ailments, MUO's initial file reviewer simply disagreed with the conclusions of Plaintiff's treating physicians.  The reviewer determined that without thorough and objective psychological testing, the physicians could not make a proper diagnosis of major depression.  File reviews generally are an acceptable means for plan administrators to judge the merits of a claim for benefits. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005).  The Sixth Circuit nevertheless has held that file review is inadequate where "conclusions from that review include critical credibility determinations regarding a claimant's medical history and symptomology."  *Id.* at 297.

The file review in this case was clearly not adequate for this reason.  If the file reviewer did not believe there was adequate evidence to support a diagnosis of major depression based on the credibility of the evidence and the medical history, she could have ordered an independent examination of Plaintiff as is authorized under the policy. (AR at 31.)  The Sixth Circuit has said, "where an administrator exercises its discretion to conduct a file review, credibility determinations without the benefit of a physical examination support a conclusion that the decision was arbitrary."  *Helfman v. GE Grp. Life Assur. Co.*, 573 F3d 383, 395-396 (6th Cir. 2009).

14

In *Hoover v. Provident Life and Accident Insurance Co.*, 290 F.3d 801, 809 (6th Cir. 2002), the court held that the opinions of examining physicians would be afforded more weight than the opinions of non-examining physicians when considering the denial of ERISA benefits.  In this case, MUO used both a reviewing nurse and a reviewing physician.  As to the physician, Dr. Tse, it does not appear that MUO gave him the opportunity to render a final opinion concerning Plaintiff's case– an aspect of the reviewing process that alone raises concerns about its adequacy.  The reviewing nurse rejected Plaintiff's claims for lack of objective evidence of major depression, without examination of Plaintiff.

This evidence, taken together, leads this Court to the conclusion that the review of Plaintiff's file was inadequate.  To simply reject the claim on a paper review and dismiss the diagnosis of two treating physicians is insufficient, especially given the somewhat subjective nature of Plaintiff's claim.  The Court in this case credits the medical exams of Plaintiff by her physicians more than the conclusory responses proffered by MUO's medical reviewer without the benefit of physical exam.

The court also is not persuaded by Defendants' arguments that highlight small alleged inconsistencies in the record as a method of disproving that Plaintiff is disabled. Defendants point to the symptom checklists filled out by Plaintiff at the request of Dr. Parikh, to demonstrate that Plaintiff did not have symptoms consistent with major depression.  Defendants point out that Plaintiff did not note that she experienced any

"nervousness or shaking inside, any repeated unpleasant thoughts that won't leave her mind, any sudden feelings of being scared for no reason, any feeling fearful, any pounding or racing of her heart, any having to avoid certain things, places, activities because they frighten her, and any spells of terror or panic."  (Defs.' Mot. at 11.) However, Defendants fail to establish that these symptoms are necessary symptoms of major depression and panic disorder.  In other words, the symptoms that were not selected by Plaintiff may be symptoms consistent with major depression, but Defendants have not shown they are strictly necessary for a finding of major depression.

In this case, Plaintiff's treating psychiatrist concluded that Plaintiff suffers from major depression based on her listed symptoms and his examinations of her, and he further concluded that Plaintiff could not perform her job duties while suffering from major depression.  Her primary care physician concurred.  In the absence of evidence from Defendants showing that the unchecked symptoms are medically necessary for a finding of major depression, this Court cannot find the diagnoses of two licensed physicians erroneous or lacking in evidence.

## Conclusion

In conclusion, based on the applicable standard of review and the terms of the STD policy, the Court concludes that MUO's decision to deny Plaintiff STD benefits was erroneous.  Plaintiff suffers from a disability, as defined in the STD Plan, as a result of

16

2:11-cv-15016-PJD-MJH   Doc # 11   Filed 07/23/12   Pg 17 of 18   Pg ID 580

major depression, panic disorder, fingertip eczema, and intermittent swelling of the hands causing such symptoms as sleep disorder, cognitive disorder, and chronic pain. These conditions are documented throughout the administrative record and, importantly, in the documentation prepared and submitted by Plaintiff's treating doctors, Dr. Parikh and Dr. Fretz, from December 29 and December 30, 2010, respectively. (AR at 403-404.) MUO's review process was not sufficient to cause this Court to question the diagnoses of Plaintiff's board certified physicians. The review process did not uncover credible evidence to suggest Plaintiff's treating physicians had made incorrect diagnoses, and MUO did not order an independent medical exam of its own. The Court therefore reverses the plan administrator's decision to deny Plaintiff STD benefits.

As noted earlier, Defendants ask the Court to dismiss the STD Plan as a defendant in this matter. Defendants state that if any liability were to be found, only MUO would be required under the policy to pay Plaintiff's benefits. (Defs' Mot. at 6.) Plaintiff has not responded to this argument or indicated how the STD Plan is liable under ERISA. For this reason, the Court is dismissing Detroit Entertainment LLC STD Plan as a party in this case.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion to Reverse the Decision to Deny her Short-Term Disability Benefits is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendants' Cross-Motion to Affirm the Administrator's Decision and to Dismiss Detroit Entertainment LLC STD Plan as a Party is **GRANTED IN PART AND DENIED IN PART** in that it is **GRANTED** with respect to the dismissal of Detroit Entertainment LLC STD Plan and **DENIED** with respect to the affirmation of the Administrator's decision.

Dated: July 23, 2012                           s/PATRICK J. DUGGAN

                                               UNITED STATES DISTRICT JUDGE

Copies to:

Patrick Derkacz, Esq.

James Brenner, Esq.